**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

MAURICE CLINE,

      Plaintiff,

      v.

SERVICESOURCE INTERNATIONAL,
INC., ANDREW M. BAKER,
JANE OKUN BOMBA,
JOHN FERRON, JOHN HARRIS,
JOHN A. MEYER, GARY B. MOORE,
and RICHARD WALKER,

      Defendants.

---

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND**
**JURY DEMAND**

---

Plaintiff Maurice Cline ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**<u>NATURE OF THE ACTION</u>**

1.      This is an action against ServiceSource International, Inc. ("ServiceSource" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of ServiceSource by Concentrix Corporation ("Concentrix").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company is headquartered in this District.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of ServiceSource common stock.

7.      Defendant ServiceSource provides business process-as-a-service solutions worldwide. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "SREV."

8.      Defendant Andrew M. Baker ("Baker") is a director of the Company.

9.      Defendant Jane Okun Bomba ("Bomba") is a director of the Company.

10.     Defendant John Ferron ("Ferron") is a director of the Company.

11.     Defendant John Harris ("Harris") is a director of the Company.

12.     Defendant John A. Meyer ("Meyer") is a director of the Company.

13.     Defendant Gary B. Moore ("Moore") is Chief Executive Officer and Chairman of the Board of the Company.

14.     Defendant Richard Walker ("Walker") is a director of the Company.

15.     Defendants Baker, Bomba, Ferron, Harris, Meyer, Moore, and Walker are collectively referred to herein as the "Individual Defendants."

16.     Defendants ServiceSource and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A. The Proposed Transaction**

17.     On May 9, 2022, ServiceSource announced that it had entered into a definitive merger agreement pursuant to which Concentrix would acquire ServiceSource for $1.50 per share in cash. The press release announcing the Proposed Transaction states, in pertinent part:

**ServiceSource International, Inc. to be Acquired by Concentrix Corporation in All-Cash Transaction**

*Transaction Combines Highly Complementary Customer Experience (CX) Solutions Businesses*

*Unifies Best-in-Class Digitally-Enabled Capabilities to Support the Entire Customer Journey for B2B and B2C Clients*

*47% Premium for ServiceSource Stockholders*

*Transaction was Unanimously Approved by ServiceSource's Board of Directors Stockholders Representing Approximately 33.5% of the Outstanding Voting Power Have Entered Into Voting Agreements in Support of the Transaction*

May 09, 2022 08:00 AM Eastern Daylight Time

DENVER--(BUSINESS WIRE)--ServiceSource International, Inc. (NASDAQ: SREV), the customer journey experience company, today announced it has entered into a definitive merger agreement pursuant to which Concentrix Corporation (NASDAQ: CNXC), a leading global provider of customer experience (CX) services and technologies, will acquire ServiceSource in an all-cash transaction.

ServiceSource stockholders will receive $1.50 per share in cash for each issued and outstanding share of common stock they own. The purchase price represents a 47% premium to ServiceSource's unaffected closing stock price on May 6, 2022.

*     *     *

**Transaction Timing and Approvals**

Completion of the Merger is not subject to a financing condition and the transaction is expected to close in the second half of fiscal year 2022, subject to the approval of ServiceSource's stockholders and customary closing conditions, including expiration or termination of the applicable waiting periods under the Hart-Scott-Rodino Antitrust Improvements Act of 1976.

**Advisors**

Centerview Partners LLC is acting as financial advisor to ServiceSource and Davis Graham & Stubbs LLP is serving as ServiceSource's legal advisor.

**About ServiceSource**

ServiceSource International, Inc. (NASDAQ: SREV) is a global outsourced go-to-market services provider that accelerates B2B digital sales and customer success transformation. Our expert sales professionals, data-powered insights and proven methodologies scale and reimagine customer journey experiences (CJX®) into profitable business outcomes. Backed by more than 20 years of experience, ServiceSource drives billions of dollars in client value annually, conducting commerce in 45 languages and 175 countries. To learn more about how we design, develop and manage CJX solutions that transform the agility, speed, efficiency and value of our clients' growth initiatives, visit www.servicesource.com.

**About Concentrix**

Concentrix Corporation (Nasdaq: CNXC), is a leading global provider of customer experience (CX) solutions and technology, improving business performance for some of the world's best brands including over 100 Fortune Global 500 clients and over 125 new economy clients. Every day, from more than 40 countries and across 6 continents, our staff delivers next generation customer experience and helps companies better connect with their customers. We create better business outcomes and help differentiate our clients by reimagining everything CX through Strategy + Talent + Technology. Concentrix provides services to clients in our key industry verticals: technology & consumer electronics; retail, travel & ecommerce; banking, financial services & insurance; healthcare; communications & media; automotive; and energy & public sector. Visit www.concentrix.com to learn more.

18.    On June 2, 2022, Defendants caused to be filed with the SEC a Schedule 14A

4

Preliminary Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

19.    The Proxy Statement, which recommends that ServiceSource shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) ServiceSource' financial projections; (ii) the financial analyses performed by the Company's financial advisor, Centerview Partners LLC ("Centerview"), in connection with its fairness opinion; (iii) the sales process leading up to the Proposed Transaction; and (iv) potential conflicts of interest involving Company insiders.

20.    The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) Recommendation of the Board and Reasons for the Merger; (iii) Opinion of ServiceSource's Financial Advisor; and (iv) Projections Prepared by ServiceSource's Management.

21.    Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, ServiceSource shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1.    Material Omissions Concerning ServiceSource's Financial Projections**

22.    The Proxy Statement omits material information concerning ServiceSource's financial projections.

23.    With respect to ServiceSource's financial projections, the Proxy Statement fails to disclose: (1) all line items underlying the projections; (2) the Company's net income projections;

and (3) a reconciliation of all non-GAAP to GAAP metrics.

24.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of ServiceSource and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

25.     When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited June 10, 2022) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

26.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2.    Material Omissions Concerning Centerview's Analyses

27.     In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Centerview.

28.     With respect to Centerview's "*Selected Public Company Analysis*," the Proxy Statement fails to disclose the individual financial metrics of each company Centerview observed in its analysis.

29.     The Proxy Statement fails to disclose the following concerning Centerview's "*Selected Transaction Analysis*": (1) the individual financial metrics of each transaction Centerview observed in its analysis; (2) the closing date of each transaction; and (3) the value of each transaction.

30.     The Proxy Statement fails to disclose the following concerning Centerview's "*Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the discount rates and perpetuity growth rates used in the analysis; (2) the forecasted unlevered free cash flows of ServiceSource beginning the first quarter of 2026 and ending in December 2031, and all underlying line items; (3) the forecasted federal net operating loss carryforwards through 2034; (4) the terminal value of ServiceSource; and (5) the number of fully-diluted outstanding shares of ServiceSource common stock.

31.     With respect to Centerview's "*Premiums Paid Analysis*," the Proxy Statement fails to disclose each transaction observed and the premiums paid therein.

32.     The valuation methods, underlying assumptions, and key inputs used by Centerview in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Centerview's fairness opinion and analyses, however, fails to

include key inputs and assumptions underlying those analyses.

33.     Without the information described above, the Company's shareholders are unable to fully understand Centerview's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3.   Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

34.     The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

35.     The Proxy Statement provides that the Company entered into non-disclosure agreements with several potential buyers.

36.     The Proxy Statement, however, fails to disclose all the terms of the Company's non-disclosure agreements, including whether such agreements contained standstill provisions and "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that would preclude potentially interested parties from making superior offers for the Company.

37.     Without this information, the Company's shareholders may have the mistaken belief that potential buyers are or were permitted to submit superior proposals for the Company, when in fact, they may be contractually prohibited from doing so. This information is material because a reasonable ServiceSource shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potentially interested parties are or were foreclosed from submitting a superior proposal.

38.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**4.   Material Omissions Concerning Company Insiders' Potential Conflicts of Interest**

39.   The Proxy Statement omits material information concerning potential conflicts of interest involving Company insiders.

40.   The Proxy Statement fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

41.   Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

42.   The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

<u>COUNT I</u>

**For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder**
**<u>Against All Defendants</u>**

43.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.   During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

45.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

46.     The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

47.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

48.     Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

<u>**COUNT II**</u>
**<u>Violations of Section 20(a) of the Exchange Act</u>**
**<u>Against the Individual Defendants</u>**

49.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

50.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or

indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

51.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

52.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

53.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

54.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.     Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: June 10, 2022

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
          zhalper@halpersadeh.com

*Counsel for Plaintiff*